UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER CRUSENZA,

Plaintiff,

v.

TOWNSHIP OF AURELIUS, et al.,

Defendants.
_________________________________/

Case No. 1:26-cv-2239

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff Heather Crusenza and her mother—Betty Argersinger ("Betty")—have had a long running dispute with officials of Defendant Township of Aurelius ("the Township") regarding their zoning and property rights. Last year, the § 1983 case initiated by Betty resolved via a Consent Judgment. Betty subsequently transferred her real property to Plaintiff, and Plaintiff (represented by the same counsel as her mother) initiated this case on August 3, 2026, alleging further constitutional violations under § 1983 and seeking enforcement of the Consent Judgment, as well as injunctive and declaratory relief related to her travel trailer on the property. Pending before the Court is Plaintiff's August 12, 2026 Emergency Motion for Temporary Restraining Order and Entry of Preliminary Injunction (ECF No. 6). Defendants filed a response in opposition to the motion on August 21, 2026 (ECF Nos. 12–15). Plaintiff filed a reply that same day (ECF No. 16). For the following reasons, Plaintiff's motion is properly denied.

# I. BACKGROUND

## A. Factual Background

***Municipal Civil Infraction.*** In 2025, John and Betty Argersinger owned the subject real property on West Columbia Road in Aurelius Township, Michigan ("the West Columbia Road property") (Compl. [ECF No. 1] ¶ 25). The Township issued Betty a municipal civil infraction ticket on June 10, 2025 for "use of camper as dwelling" in violation of the Township's nuisance and zoning ordinances, initiating Case No. 25AU50256-ON in Michigan 55th District Court for the County of Ingham ("the municipal civil infraction matter") (Civil Infraction Citation, Defs. Ex. 1, ECF No. 12-2). Plaintiff owned the subject travel trailer located on the Argersinger's property (Pl. 8/12/2026 Decl. [ECF No. 6-9] ¶¶ 2, 35), as pictured:




(*id.* ¶ 5). Plaintiff alleges that she owned the travel trailer before, during, and after the municipal civil infraction matter (Compl. ¶¶ 36, 73, 124, 127; Pl. 8/12/2026 Decl. ¶ 6). Plaintiff emphasizes that she is not a named party in the municipal civil infraction matter (Compl. ¶¶ 21–23, 79, 106–08, 121), although she concomitantly describes herself as "an active participant" in the proceedings (Compl. ¶ 246).

At a July 3, 2025 hearing before a magistrate in the 55th District Court, the Township's code enforcement officer testified that the camper had been an issue since at least December 2023 and that his investigation was prompted by complaints from neighbors about the over 200-gallon liquid propane tank next to the trailer and the noise from the generator (Hrg. Tr. [Defs. Ex. 2, ECF No. 12-3] at 5–12). The code enforcement officer testified that he learned from Betty that Plaintiff was using the trailer, which was consistent with his observations of a dog, chickens, burning debris, gravel brought in to make a driveway, and "more and more stuff as time goes by" (*id.* at 10–14, 27). The code enforcement officer testified that he tried to meet with Betty and Plaintiff to "resolve this" but "[Plaintiff] never got with us in regards to any type of meeting" (*id.* at 14–15).

The code enforcement officer called a neighbor to testify, and he corroborated the officer's observations and expressed concerns about not only the noise but also sewage and the general "eyesore" of the property (*id.* at 16–20). Betty, who testified that she herself has "never once" spent a night at the subject property, explained that they purchased the property as a place for Plaintiff to "store her extra vehicles, her camper, [and] her assets" (*id.* at 21–22). Betty did not dispute the accumulated evidence of residency, pointing out only that Plaintiff did not receive her mail at the trailer and opining that Plaintiff was not "actively" living there (*id.* at 23–26).

The magistrate found that Plaintiff was living in the trailer and that the trailer could not properly be used as a dwelling under the relevant Township ordinance (*id.* at 29, 32). The magistrate ruled that "the trailer and generator shall be removed from the subject property within 30 days" or by Monday, August 4, 2025 (*id.* at 35). The Argersingers filed an appeal from the magistrate's ruling to a judge on the 55th District Court.

***The First Federal Case.*** In addition to their appeal, the Argersingers filed a lawsuit in this Court against the Township and a Township official on August 1, 2025, disputing the Township's

authority to access and inspect their property without a warrant. *Argersinger et al. v. Township of Aurelius, et al.*, No. 1:25-cv-879-JMB-SJB. The municipal civil infraction matter was stayed pending the resolution of this federal suit. On December 19, 2025, following an Early Settlement Conference with a Magistrate Judge, the parties entered into a Consent Judgment that, in pertinent part, provided the following:

> 12. Defendant TOWNSHIP OF AURELIUS and its officers, employees, agents, and designees shall not enter the property for any inspection or enforcement purpose(s) absent 1.) a judicial warrant; 2.) voluntary contemporaneous or prior consent of the lawful possessor; or 3.) a recognized exigent-circumstances exception.
>
> * * *
>
> 16. No Defendant may retaliate in any manner or form for Plaintiffs having filed, prosecuted, or maintained this federal action or otherwise secured this Consent Judgment.… This retaliation protection provision extends equally to all possessors, successors, and future occupants of the West Columbia Road property, each of whom may seek to enforce the provisions of this Consent Judgment as it they were a plaintiff in this action. This Consent Judgement shall not prevent the Defendants from enforcing its zoning, ordinance or applicable law enforcement provisions with respect to the Columbia Road property or its owners, lessees, occupants or transferees pursuant to constitutionally recognized procedures.
>
> 17. The prior zoning violations, citation, municipal charges, alleged ordinance violations, notices of violation, or compliance demands issued by Defendant TOWNSHIP OF AURELIUS or its officers relating to West Columbia Road property or Plaintiffs (as its owners), which are currently the subject of the lawsuit currently pending in the Michigan 55th District Court, Case No. 25AU50256-ON, shall be resolved by the continuation of that lawsuit in the Michigan 55th District Court. The Defendants waive all fines, costs, and monetary relief associated with that lawsuit should they prevail, but this waiver does not include a waiver of declaratory and injunctive relief. The parties hereby agree to accept the 55th District Court's ruling as binding and the parties hereby waive the right to any appeal from that ultimate ruling. The Township may seek to introduce all evidence gathered to date by the Township or its representatives in that lawsuit and Plaintiffs herein may object to such introduction, any and all objections, including constitutional, being fully preserved, and the Michigan 55th District Judge will make the decision regarding admissibility of such evidence.…

> 18. Nothing in this Consent Judgment waives any future or unripe claim arising from new, different, or ongoing conduct by Plaintiffs or Defendants and this Consent Judgment shall not operate as res judicata, collateral estoppel, or claim preclusion as to any future enforcement attempts or future constitutional violations except to the [sic] establish the minimal constitutional obligations under the Fourth Amendment and the agreement to the retaliation protection provisions from Paragraph 16.
>
> 19. This Consent Judgment resolves all pending claims by this Consent Judgment and Plaintiffs and Defendants hereby release and discharge the other as well as its employees, agents, officers, and elected officials from all manner of action and causes of action, including, but not limited to, legal, equitable and administrative proceedings, suits, causes of action, contracts, claims, damages, demands and rights whatsoever, now existing or which may hereafter accrue solely as a result of facts alleged from the complaint that are not otherwise awarded by this Consent Judgment.

(No. 1:25-cv-879-JMB-SJB, ECF No. 19).

Plaintiff again describes herself as "actively participat[ing]" in the proceedings, including its "prosecution and resolution" (Compl. ¶ 277). Indeed, Plaintiff indicates that she participated in the Settlement Conference with the Magistrate Judge (*id.* ¶ 281). And Plaintiff alleges that she is a "successor" as identified in the Consent Judgment (*id.* ¶¶ 11, 66).

***Return to 55th District Court.*** After entry of the Consent Judgment, the parties returned to 55th District Court, and an evidentiary hearing on the municipal civil infraction was conducted on June 1, 2026. The 55th District Court Judge heard testimony from five witnesses.

First, a neighbor testified about the state of the subject property, which continued to include the travel trailer and the propane tank—a tank "like something [that] would [be] deliver[ed]," not your "normal camping propane tank"; turkeys and chickens; and a generator "running non-stop all the time" (Hrg. Tr. [Defs. Ex. 4, ECF No. 13] at 8–15). The neighbor testified that Plaintiff was at the camper "[a]lmost as much as [he] was at [his] house" (*id.* at 14–17).

A second neighbor estimated that the travel trailer was "probably 24 [feet]" in length and testified that it was powered by a "10 horse generator" that "run 24 hours a day" (*id.* at 21–23). The second neighbor described the propane tank as the size of a "submarine" and containing probably 250 or 300 gallons (*id.* at 23, 26). He testified that Plaintiff was at the property "every day" (*id.*).

Third, the township clerk testified that in June 2025, she asked Plaintiff "to make the changes" and informed Plaintiff "that she couldn't live in a camper on the property" (*id.* at 32–33).

Fourth, Betty testified that Plaintiff, who had been paying the mortgage since they purchased it, would "visit" the property on a "daily" basis (*id.* at 38, 45–46). Betty testified that the generator was no longer used on a daily basis, although both the generator and the propane tank were still present (*id.* at 49–50). Betty related that Plaintiff uses a "holding tank" for human waste that "has to be pumped whenever it's at a certain point" (*id.* at 50–51).

Last, Plaintiff herself testified that she has a "land contract" with Betty, a "rent-to-own" situation (*id.* at 57, 63). She testified that the camper has a refrigerator, stove, and sleeping area and that she maintains turkeys and chickens on the property; however, she indicated that she does not live in the trailer "each and every day" (*id.* at 55–56, 60–61). According to Plaintiff, her boyfriend owns a home that is her "primary residence" (*id.* at 61). Consistent with the descriptions of the trailer from the neighbors and Betty, Plaintiff indicated that the trailer has wheels and could be hooked up to a pickup truck for removal (*id.* at 54).

Counsel for the Township argued that while some of the testimony was conflicting, the "intent" of the placement of the camper was to use it as a dwelling, which violated the ordinance (*id.* at 68–70).

Plaintiff's counsel agreed that the parties' Consent Judgment in this Court left the ordinance interpretation up to the 55th District Court (*id.* at 70). Plaintiff's counsel pointed out that the Township "should have issued the ticket to [Plaintiff]," but he conceded that Plaintiff was a "land contract vendee" and that it would not be an "unreasonable approach" to find that Plaintiff had an "equitable ownership" of the property (*id.* at 73). He argued that the Township had not satisfied its burden of proving that Plaintiff violated the Township ordinance by using the trailer "as a dwelling" (*id.*).

In rebuttal, the Township pointed out that the ordinance prohibits using a camper as a dwelling and that whether the user was Betty or her daughter, "it's all the same" (*id.* at 74–75). According to the Township, "[w]ho the citation was issued to is not relevant for the purpose of this case" (*id.* at 77). The 55th District Court took the matter under advisement.

On June 3, 2026, the 55th District Court issued an Opinion and Order, ultimately holding the following:

> (1) [Betty] is found responsible for a municipal civil infraction violation of Section 16-41 of the Aurelius Township Zoning Ordinance.
>
> (2) [Betty] is permanently enjoined from allowing the travel trailer "to continue being used as a dwelling unit."
>
> (3) "[U]se of the travel trailer/camper as a dwelling unit is a nuisance per se" under the Township Code[.]"
>
> (4) "[Betty] is ordered to abate the nuisance by removing the travel trailer/camper from the property within 30 days of the date of this Order"

(6/3/20206 Op. & Order [Defs. Ex. 5], ECF No. 15-1 at PageID.284–285). The 55th District Court acknowledged that Plaintiff was not given a separate citation because "she was not listed as owner in the Township records" (*id.* at PageID.282). However, the 55th District Court determined that as a land contract vendee, Plaintiff "also falls within the definition of 'owner'" (*id.*).

***The Conveyance & Post-Conveyance Proceedings.*** On June 30, 2026, the Argersingers conveyed the West Columbia Road property to Plaintiff via quitclaim deed (Compl. ¶¶ 10, 32, 34, 122, 126; Quit Claim Deed [Pl. Ex. B, ECF No. 6-3]).

On July 2, 2026, the Township Board met in special session and, in pertinent part, unanimously agreed to "give township attorney direction to file an order with the court regarding removal of the trailer at 6253 W Columbia if the trailer is not gone from the property by July 4th 2026" (7/2/26 Minutes [Pl. Ex. C, ECF No. 6-4]). The Township did not thereafter remove the trailer; rather, in deference to Plaintiff's counsel's disagreement with the Township's interpretation of the pending order, the Township moved the 55th District Court for clarification of the order (Compl. ¶ 133; ECF No. 12 at PageID.124; *see also* 7/16/2026 Twp. Mot. to Clarify [Defs. Ex. 6, ECF No. 15] and 7/16/2026 Resp. to Twp. Mot. to Clarify [Pl. Ex. D, ECF No. 6-5]).

The 55th District Court held a hearing on July 28, 2026. At the hearing, Plaintiff's counsel asked the 55th District Court to clarify that the ordinance "does not preclude the use of [the] trailer so long as the trailer is stored [and] not to use the trailer for any residential purposes" (7/28/2026 Hrg. Tr. [Pl. Ex. D, ECF No. 6-6] at 7). Plaintiff's counsel indicated that "[Plaintiff] is the one who was utilizing the trailer," and he posited that "she was not in violation or not using it for the residence in that—in violation of the zoning ordinance" (*id.* at 6). Plaintiff's counsel did not inform the 55th District Court that the subject real property had been re-titled in Plaintiff's name, nor did he argue that the 55th District Court's order could not be enforced against Plaintiff.

The 55th District Court rejected Plaintiff's position, pointing out that removal was expressly permitted under the Township ordinance and reasoning that "otherwise it would be [an] ongoing issue of trying to monitor is somebody residing there again or not" (*id.* at 7–8). The 55th District Court declined to find Betty in contempt of court and instead provided an additional thirty

days for compliance with the order, indicating that "[i]f she does not abate the nuisance then the township has the authority under the municipal civil infraction act to go onto the property and remove the trailer and place the cost of removal on the tax rolls for the property" (*id.* at 8). The 55th District Court's bench ruling was effectuated by an Order dated August 10, 2026, indicating that "no later than 30 days from the date of signing of this Order, the [Township] shall remove the trailer/camper from the property" (8/10/2026 Order [Pl. Ex. F], ECF No. 6-7 at PageID.91).[1] The 30-day period would apparently run from the August 10, 2026 signature, implicating a September 9, 2026 deadline.

**B. Procedural Posture**

On August 3, 2026, Plaintiff initiated this case with the filing of her Complaint against the Township and three Township officials (ECF No. 1). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Class-of-One Equal Protection (Count I); Vindictive Enforcement–Fourteenth Amendment (Count II); First Amendment Retaliation (Count III); Deprivation of Property without Procedural Due Process–Fourteenth Amendment (Count IV); Unreasonable Entry and Seizure–Fourth Amendment (Count V). Plaintiff also seeks "Enforcement of Consent Judgment; Paragraph 16–Anti-Retaliation Paragraph" (Count VI) and a Declaratory Judgment (Count VII). Plaintiff represents that she is "not presently us[ing] the trailer as [her] residence" (8/12/2026 Decl. ¶ 20), and she expressly "does not claim a right to use the trailer unlawfully as a dwelling" (Compl. ¶ 131). However, she "want[s] the trailer to remain where it is" (8/12/2026 Decl. ¶ 32).

[1] The 55th District Court inadvertently indicated that it "confirmed the June 3, 3036 [sic] Order" and identified the property address as 6253, rather than 6263 West Columbia Road. The 55th District Court has not yet amended its order to correct these typographical errors. The Court notes that Plaintiff's surname is spelled "Crusenza" in the Complaint (ECF No. 1) and "Cusenza" in her Declaration (ECF No. 6-9). This apparent typographical error has also not yet been corrected.

On August 12, 2026, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Entry of Preliminary Injunction (ECF No. 6). Plaintiff does not seek permission to use the trailer as a dwelling (*id.* at PageID.43). She indicates that it is "not presently being used or occupied as a dwelling," and she agrees that it will not be so used (*id.*). Plaintiff seeks to prevent the Township from entering her land and seizing her property (*id.*). Defendants filed a response in opposition to the motion on August 21, 2026 (ECF Nos. 12–15). Plaintiff filed a reply that same day (ECF No. 16).

## II. ANALYSIS

### A. Motion Standard

"Preliminary injunctions are 'extraordinary and drastic remed[ies] ... never awarded as of right.'" *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 453 (6th Cir. 2014) (examining a preliminary injunction that preserved the "state-law status quo") (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). The plaintiff bears the burden to justify relief. *Id.* (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974)).

In evaluating a request for either a temporary restraining order or a preliminary injunction, a district court considers (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024); *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc)). The final two factors, the harm to

others and the public interest, "merge when the Government is the opposing party." *Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *Gun Owners of Am., Inc. v. Barr*, No. 19-1298, 2019 WL 1395502, at *1 (6th Cir. Mar. 25, 2019) (same).

Ultimately, determining whether the four factors weigh in favor of granting or denying injunctive relief is within the district court's discretion. *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 731 (6th Cir. 2021); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 541 (6th Cir. 2007). *See also Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 928 F.3d 514, 517 (6th Cir. 2019) (instructing that a court should "balance rather than tally these factors").

Federal Rule of Civil Procedure 65, which governs the issuance of injunctive relief, does not explicitly require a court to conduct an evidentiary hearing before issuing an injunction. FED. R. CIV. P. 65(a)(1). The Sixth Circuit Court of Appeals has held that an evidentiary hearing is required only when there is a disputed factual issue and the documentary evidence upon which to base an "informed, albeit preliminary, conclusion" is inadequate. *Certified Restoration*, 511 F.3d at 552–53 (quoting *S.E.C. v. G. Weeks Sec., Inc.,* 678 F.2d 649, 651 (6th Cir. 1982)).

**B. Discussion**

In support of her motion, Plaintiff argues that the Rule 65 factors favor preservation of the status quo, which she characterizes not as the impending removal ordered by the 55th District Court but "[m]aintaining the trailer exactly where it presently sits" (ECF No. 6 at PageID.51). In response, Defendants opine that "[t]his entire case is gamesmanship" and that injunctive relief would be inappropriate (ECF No. 12 at PageID.117–118, 123). The parties have supplied the Court with a plethora of documentary evidence, and the record is adequate for this Court to make

informed, albeit preliminary, conclusions about the proper application of the Rule 65 factors. Additionally, having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

***Likelihood of Success on the Merits.*** First, to establish a likelihood of success on the merits of a claim, a plaintiff must show "more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). It is ordinarily sufficient if the plaintiff has "raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 982 (6th Cir. 2021) (quoting *Six Clinics, supra*).

Plaintiff, whose request for injunctive relief is predicated on the merits of her § 1983 procedural-due-process claim, emphasizes that her claimed property interest has not been adjudicated and that the Township improperly proposes to transform process against Betty into process against her (ECF No. 6 at PageID.52–55).

In response, Defendants argue, in pertinent part, that Betty and Plaintiff have been "tied at the hip" throughout these proceedings and that Plaintiff "had notice, an opportunity to be heard, and was in fact heard by actually participating and giving testimony" (ECF No. 12 at PageID.118, 132). Defendants point out that as determined by the 55th District Court, Plaintiff was a "land contract vendee" with equitable title throughout the court proceedings (*id.* at PageID.123–124, 130–131).

Section 1983 "is not itself a source of substantive rights" but merely "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *see also Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) (quoting *Graham*, for

the same proposition). The Due Process Clause of the Fourteenth Amendment protects persons against State deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Supreme Court has described 'the root requirement' of the Due Process Clause as notice and an opportunity to be heard before one is deprived of a significant property interest." *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 354 (6th Cir. 2010) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

To establish a procedural-due-process claim in a § 1983 action, "plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Cooperrider v. Woods*, 127 F.4th 1019, 1042 (6th Cir. 2025) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

While due process does not require that the plaintiff receive actual notice, "the notice requirement of due process is satisfied if the plaintiff receives actual notice." *Shandor v. City of Eastpointe*, No. 20-1385, 2021 WL 4775190, at *3 (6th Cir. Oct. 13, 2021) (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)). Actual notice "more than satisfie[s]" due process. *Espinosa*, 559 at 272 (2010). *See*, *e.g.*, *Sekulovski v. Com. Twp.*, No. 22-1772, 2023 WL 4535507, at *1 (6th Cir. July 13, 2023) (rejecting the plaintiff's argument that the "failure to serve her with the infraction citation deprived her of due process, thus rendering the dog's removal an

'unreasonable seizure'" because she "received actual notice here: she knew the court had scheduled a hearing about their dog biting a child").

The current record, as described, indicates that Plaintiff had actual notice and realized opportunities to be heard about the removal of her camper, including argument on her behalf by her counsel at the June 1, 2026 hearing in 55th District Court. Indeed, Plaintiff's own allegations belie a contrary conclusion:

> 244. Heather independently exercised and supported constitutionally protected rights by communicating with Township officials, providing information and evidence, assisting the Argersingers and their counsel, appearing and participating in the federal settlement conference, appearing and testifying in the related state-court proceedings, and continuing to oppose the Township's unconstitutional treatment of her property.
>
> * * *
>
> 246. Defendants knew that Heather was not merely Betty's adult daughter or a passive successor, but an active participant in the proceedings adverse to the Township.
>
> * * *
>
> 275. Heather is Betty's adult daughter and was closely associated with Betty throughout the events underlying the federal action.
>
> * * *
>
> 277. Heather did not merely benefit indirectly from the Argersingers' federal action. She actively participated in and supported the prosecution and resolution of that litigation.

While Plaintiff asserts in reply that mere participation is "not joinder" (ECF No. 16 at PageID.289–290), due process does not require joinder. Moreover, Plaintiff's assertion diminishes the magnitude of Plaintiff's involvement over the years and the concessions in this record about the import of her status. *See generally Graves v. Am. Acceptance Mortg. Corp.*, 677 N.W.2d 829, 833

(Mich. 2004) (indicating that the vendee is given "equitable title," which is a "present interest in realty").

Last, the Court need not analyze the merits of a procedural-due-process claim if there is no demonstration of prejudice. *Moreno-Martinez v. Barr*, 932 F.3d 461, 464 (6th Cir. 2019); *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). To establish the requisite prejudice, a plaintiff must show that the due process violations led to a substantially different outcome from what would have occurred absent those violations. *Marqus v. Barr*, 968 F.3d 583, 591 (6th Cir. 2020); *Shoemaker v. City of Howell*, 795 F.3d 553, 563 (6th Cir. 2015); *Graham*, 519 F.3d at 549–50. Plaintiff does not address whether—let alone demonstrate that—a substantially different outcome would have occurred had her name been included on the citation or had she received different opportunities to be heard. The Court is presently convinced that more process would add little value to this burgeoning litigation.

In short, the Court determines that Plaintiff is unlikely to succeed on the merits of her procedural-due-process claim. Where a movant is unlikely to succeed on the merits, "there is little reason for a court to take the drastic step of enjoining the opposing party at the onset of a suit." *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024).

***Irreparable Injury.*** Turning next to irreparable injury, the Sixth Circuit has emphasized that analysis of this factor is "indispensable because, without it, a plaintiff cannot show why he needs relief now rather than at the lawsuit's end." *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). "[A]lthough the extent of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory." *D.T.*, 942 F.3d at 327.

"Irreparable harm is the core of the preliminary injunction[.]" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025).

Plaintiff argues that she is entitled to process before being deprived of "possession and control" of her property or having imposed "the cost of removal to be placed upon the tax roll for [her] property," and any costs resulting from damages and/or "towing or storage charges" (ECF No. 6 at PageID.56–57). However, as Defendants point out, there is no imminent harm because Plaintiff controls the outcome inasmuch as the travel trailer, by its very nature, "can simply be rolled off of the property by the Plaintiff and placed somewhere else" (ECF No. 12 at PageID.128). Again, Plaintiff apparently has until September 9, 2026 to comply with the August 10, 2026 order of the 55th District Court. In the event the Township, rather than Plaintiff, moves and stores the trailer, any potential damages in doing so can be remedied by monetary damages. *See Int'l Union*, 148 F.4th at 371 (6th Cir. 2025) (indicating that the plaintiff must show that she is at risk of suffering some harm that is "not fully compensable by monetary damages").

In short, the prospective economic losses that Plaintiff identifies do not support the extraordinary and drastic award of injunctive relief.

***Balancing of Equities.*** The remaining factors likewise weigh against issuing injunctive relief. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). Similarly, the public interest lies in enforcement of zoning ordinances, which are crucial to the maintenance of public health, safety, and the welfare of citizens of the Township.

In summary, the Rule 65 factors, on balance, weigh against granting Plaintiff's request. Therefore, the Court, in its discretion, denies her motion.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order and Entry of Preliminary Injunction (ECF No. 6) is DENIED.

Dated: August 26, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge